IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

**CLAUDIA M. JOHNSTON,**

        Plaintiff

        v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

        Defendant.

Civil No. 2:10-cv-01498-SU

**FINDINGS AND RECOMMENDATION**

SULLIVAN, Magistrate Judge:

Plaintiff Claudia Johnston ("Johnston") seeks judicial review of the Social Security Commissioner's final decision finding her not disabled prior to June 1, 2009. This court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision should be affirmed for the reasons that follow.

## BACKGROUND

Born in 1951, Ms. Johnston first applied for benefits on September 18, 2007. Tr. 114-19.[1]

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on April 19, 2011 (Docket # 11).

1 - FINDINGS AND RECOMMENDATION

She alleges disability since April 1, 1999 (Tr. 114, 117), due to fibromyalgia, degenerative disc disease, and arthritis. Tr. 160. The Commissioner denied these applications initially and upon reconsideration (Tr. 53-68), and an Administrative Law Judge ("ALJ") held a hearing on April 14, 2010. Tr. 28-52. On April 23, 2010, the ALJ found Ms. Johnston disabled after June 1, 2009, but not disabled prior to that date. Tr. 12-22. The Appeals Council denied review of the matter on October 13, 2010. Tr. 1-3. This action made the ALJ's decision the final decision of the Commissioner, 20 C.F.R. § 410.670a, and Ms. Johnston now appeals.

The record before this court begins in September 2001, and shows that Ms. Johnston received pain medication for "chronic functional back pain" due to a work-related accident occurring twelve years earlier, and a 1998 laminectomy. Tr. 386. She was assessed with chronic low back pain on several more occasions in 2001. Tr. 381, 383-86. Ms. Johnston complained of hand numbness in July 2002, but a nerve conduction study was normal. Tr. 392. Treating physician Shawn Blanchard, M.D., continued to assess chronic back pain with radiculopathy, and prescribe opiate pain medications, throughout 2002. Tr. 371-80. In July 2003 he changed this diagnosis to "chronic pain syndrome," (Tr. 318), and continued to prescribe opiates throughout 2003. Tr. 316-23. On September 2, 2005, Dr. Blanchard diagnosed "fibromyalgia and/or neuromuscular pain disorder." Tr. 300. Dr. Blanchard continued prescribing opiates until September 2007, when the record medical record before this court closes. Tr. 331.

## LEGAL STANDARD

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193

(9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such

a severe impairment, she is not disabled. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the Commissioner's regulations. If it does, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p.

At step four, the ALJ uses this information to determine if the claimant can perform her past relevant work. If the claimant can perform her past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Yuckert*, 482 U.S. 137, 146 n.5; *Tackett*, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity,

4 - FINDINGS AND RECOMMENDATION

age, education, and work experience." *Tackett*, 180 F.3d. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 416.920(g); *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ found Ms. Johnston's lumbar degenerative disc disease and chronic pain syndrome "severe" at step two in the sequential proceedings. Tr. 14. He found that these impairments did not meet or equal a "listed" impairment at step three. Tr. 15-16. For the period prior to June 1, 2009, the ALJ found Ms. Johnson retained the RFC to perform "light" work, "except she should never crawl or use ladders, ropes or scaffolds, and she could occasionally climb, stoop, kneel and crouch." Tr. 17. The ALJ found that Ms. Johnston could perform her past relevant work as a collections clerk prior to June 1, 2009 (Tr. 20), and therefore not disabled prior to June 1, 2009.

Beginning on June 1, 2009, the ALJ found that Ms. Johnston retained the RFC to perform light work, and never able to crawl, climb ladders, ropes, or scaffolds, and only occasionally climb, stoop, kneel, and crouch. Tr. 20. As of June 1, 2009, the ALJ also found that Ms. Johnston could "understand, remember, and carry out only short, simple instructions," and found her able to perform routine, repetitive work. *Id.* The ALJ found that this RFC precluded performance of Ms. Johnston's past relevant work, and that she was unable to perform work in the national economy. Tr. 21. The ALJ therefore found Ms. Johnston disabled as of June 1, 2009, and eligible for SSI benefits from that date. Tr. 21. The ALJ found Ms. Johnston ineligible for DIB benefits because she was not disabled prior to her December 31, 2004, date last insured.

## ANALYSIS

Ms. Johnston challenges the ALJ's analysis of her credibility and the opinion of treating

5 - FINDINGS AND RECOMMENDATION

physician Shawn Blanchard, M.D.  Because the ALJ found her disabled as of June 1, 2009, Ms. Johnston's challenge to the ALJ's decision pertains only to the period before that date.

## I.    Credibility

Ms. Johnston asserts that the ALJ failed to give adequate reasons for rejecting her testimony.

### A.    Credibility Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 416.929(a).  Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible.  *Lingenfelter,* 504 F.3d at 1036 (*citing Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).  The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen*, 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id.*  The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."  *Robbins*, 466 F.3d at 883.

### B.    Analysis

6 - FINDINGS AND RECOMMENDATION

The ALJ bifurcated his credibility analysis, making distinct findings for the periods before and after the June 1, 2009, date the ALJ found Ms. Johnston disabled. The ALJ first found Ms. Johnston's allegations "as to the existence of her symptoms prior to June 2009 are only partially supported by the medical record." Tr. 18. Here he found "some of" her allegedly disabling impairments either not medically determinable or not "severe" under the Commissioner's regulations, and her testimony "so extreme as to appear implausible." *Id.* The ALJ also found that Ms. Johnston's symptoms during this period were managed by conservative treatment only, and found her symptoms unsupported by the medical record. *Id.* Finally, the ALJ discussed Ms. Johnston's activities of daily living and work history. Tr. 18-19.

The ALJ made no credibility finding associated with his RFC assessment for the period after June 1, 2009. Tr. 20.

### 1. Unchallenged Findings

Ms. Johnston does not challenge the ALJ's finding that her symptom testimony was vague and implausible, suggesting that she exaggerated. Tr. 18. The ALJ may cite a claimant's veracity in his credibility analysis, *Tomassetti v. Astrue*, 533 F.3d 1045, 1040 (9th Cir. 2008), and this finding should therefore be affirmed.

### 2. Activities of Daily Living

The ALJ discussed Ms. Johnston's reported activities. Tr. 18-19. These activities included caring for herself and her dog, walking the dog, preparing simple meals, performing light household chores, walking, using public transit, shopping, managing her finances, reading, writing, watching movies and television, doing crossword puzzles, embroidering, sewing, occasionally gardening, and socializing with friends. Tr. 19. The ALJ found these activities consumed significant portions of

Ms. Johnston's days, and inconsistent with her allegation of total disability. *Id.*

Ms. Johnston now asserts that the ALJ mischaracterized her activities, and that "none of these are inconsistent with the plaintiff's testimony." Pl.'s Opening Br. 12.

The record reflects the ALJ's description of Ms. Johnston's reported activities. Ms. Johnston wrote that she walks her dog for a quarter mile on a flat surface (Tr. 193), prepares simple meals, washes a "very few" dishes, and watches television. Tr. 195, 197. Her hobbies include reading, writing, watching television and movies, gardening, sewing, cooking, baking, artwork, crafts, biking, hiking, camping, and caring for her dog. Tr. 197. Ms. Johnston subsequently wrote that she does not read or write much anymore because "I don't see as well as I used to," and that she no longer gardens, sews, bakes, or does artwork and crafts. *Id.* However, Ms. Johnston's son, Charles Barnes, wrote that she does household chores and laundry, walks her dog, and "sometimes" fixes a meal (Tr. 166), and her daily hobbies include writing, watching television and sewing. Tr. 170.

The ALJ credibility analysis may cite a claimant's testimony that is inconsistent with a claimant's allegation of disability. *Batson*, 359 F.3d at 1196. The ALJ did not reject Mr. Barnes' testimony, and Ms. Johnston does not challenge the ALJ's acceptance of Mr. Barnes' testimony. The record therefore supports the ALJ's finding that Ms. Johnston performed the activities and hobbies such as household chores, walking her dog, writing, watching television, and sewing. The ALJ's finding on the matter should therefore be affirmed.

Ms. Johnston also asserts that the ALJ did not consider her testimony regarding how often she performed these activities. Pl.'s Opening Br. 12-13. When two reasonable interpretations of a claimant's activities arise, this court must defer to the ALJ's interpretation of those activities. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). Ms. Johnston stated that she has not

8 - FINDINGS AND RECOMMENDATION

performed her various hobbies in ten years, but her son wrote that she continues to write and sew daily. Tr. 170. The ALJ's finding regarding these activities is therefore based upon the record, and should also be affirmed.

### 3. Work History

The ALJ cited Ms. Johnston's work history, noting that she worked "only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairment or other factors." Tr. 19.

Ms. Johnston asserts that the ALJ improperly discredited her testimony based on "secondary gain." Pl.'s Opening Br. 15. This submission misconstrues the ALJ's finding; the ALJ made no finding or suggestion that Ms. Johnston's application was motivated by secondary gain. The ALJ may cite a claimant's work history in his credibility analysis; a poor work history may detract from a claimant's credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ's inference on the matter is based upon the proper legal standards and should therefore be affirmed.

### 4. Conservative Treatment

The ALJ found that Ms. Johnston utilized "conservative and routine" treatment for her impairments. Tr. 18. The record shows that, during the period under review, Ms. Johnston regularly visited treating physician Dr. Blanchard for opiate prescription refills, but received no other treatment. Tr. 316-23, 371-80, 331. The ALJ's characterization of this treatment as "conservative" is reasonable based on the record. The ALJ's credibility determinations may consider a claimant's utilization of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007), and the ALJ's findings should therefore be affirmed.

### 5. Medical Record and Credibility

Finally, the ALJ found Ms. Johnston's symptom testimony pertaining to the period before June 1, 2009, inconsistent with the medical record. Tr. 18-19. Ms. Johnston asserts this is erroneous as a matter of law. Pl.'s Opening Br. 10.

Once a claimant establishes an impairment, the ALJ may not reject a claimant's testimony simply because it is unsupported by the medical record. *Bunnell*, 947 F.2d at 346. However, the ALJ may consider physician opinions and observations in conjunction with other credibility findings. *Robbins*, 466 F.3d at 883 (holding that the ALJ may not reject a claimant's testimony "solely" because it is inconsistent with the medical record); *Smolen*, 80 F.3d at 1284 (holding that the ALJ's credibility analysis may consider physician observations regarding nature, onset, duration, and frequency of symptoms as one of many facets of a credibility determination). Here, the ALJ noted Ms. Johnston's medical record in conjunction with the other credibility findings discussed above. He did not rely exclusively upon the medical record in rejecting Ms. Johnston's credibility, and Ms. Johnston therefore does not establish that the ALJ erroneously applied the applicable legal standards pertaining to the medical record and credibility analysis.

### C.     Credibility Conclusion

In summary, the ALJ's credibility findings should be affirmed.

## III.    Medical Source Statements

Ms. Johnston challenges the ALJ's findings regarding treating physician Shawn Blanchard, M.D.

### A.     Standards

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). When making that determination, the ALJ generally must accord greater weight to

the opinion of a treating physician than to that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician's opinion in favor of an examining physician's opinion. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### B. Analysis

Ms. Johnston asserts that the ALJ "ignored" Dr. Blanchard's opinion, particularly his notes supporting Ms. Johnston's applications for food stamps. Pl.'s Opening Br. 5-6. She does not assert that the ALJ gave erroneous weight to Dr. Blanchard's opinion. *Id.* She also asserts that Dr. Blanchard's May 17, 2010, letter submitted to the Appeals Council now establishes disability, although she does not clearly explain how the May 2010 letter pertains to the period before June 2009. *Id.*

#### 1. Evidence Before the ALJ

The ALJ discussed Dr. Blanchard's clinical opinion and chart notes. Tr. 15. The ALJ specifically noted that these treatment notes contained little indication of a hand impairment, and also cited Dr. Blanchard's note that Ms. Johnston denied depressive symptoms and refused treatment for such symptoms. *Id.* The ALJ later discussed Ms. Johnston's medical treatment history. Tr. 18. This treatment, described above, almost entirely comprised of office visits with Dr. Blanchard between September 2001 and September 2007. *Supra*, 2. The ALJ's analysis therefore did not "ignore" Dr. Blanchard's clinical treatment notes and opinions.

11 - FINDINGS AND RECOMMENDATION

Ms. Johnston specifically asserts that the ALJ should have addressed Dr. Blanchard's notes regarding her food stamp applications. Pl.'s Opening Br. Dr. Blanchard wrote several one-sentence notes between January 2002 and September 2007 in support of Ms. Johnston's food stamp applications. Tr. 204-13. On January 29, 2002, he stated that Ms. Johnston would be unable to work for six months. Tr. 213. On February 12, 2004, Dr. Blanchard wrote that she was "unemployable," (Tr. 209) and on September 11, 2007, that she was "unable to work." Tr. 204.

The ALJ need not consider every piece of evidence in the record, *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing *Black v. Apfel*, 143 F.3d 383, 386 (9th Cir. 1998)), and the ALJ may reject physician opinions that are brief, conclusory, or unsupported by clinical notes. *Bayliss*, 427 F.3d at 1216. Dr. Blanchard's notes relating to Ms. Johnston's food stamp applications are cursory, do not explain his conclusion, and do not cite work-related limitations establishing disability under the Commissioner's regulations. Further, disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). The ALJ therefore did not err in failing to address these notes.

### 2.    May 17, 2010, Letter Before the Appeals Council

Finally, Ms. Johnston addresses a letter Dr. Blanchard wrote on May 17, 2010 (Tr. 6), which her attorney submitted to the Appeals Council on June 10, 2010. Tr. 4. The record does not indicate that the Appeals Council explicitly admitted the evidence into the record. Tr. 1-3. Ms. Johnston does not assert error in this regard.

However, Dr. Blanchard's letter is clearly included in the record before this court (Tr. 5-6), and this court reviews evidence submitted to the Appeals Council. *Taylor v. Comm'r Soc. Sec.*, 659 F.3d 1228, 1232 (9th Cir. 2011). The relevant issue is whether the evidence before the Appeals

Council supports reversal of the Commissioner's finding of nondisability, not error by the ALJ. *See id.* (concluding that the Appeal's Council's improper omission of evidence warrants remand for further proceedings before the ALJ).

Dr. Blanchard wrote that he has treated Ms. Johnston for approximately ten years. Tr. 6. He noted her "chronic pain due to severe fibromyalgia" and consequent deconditioning. *Id.* Dr. Blanchard stated, "she would be limited to no more than a sit-down job, and even then no more than part time. She would only be able to use her hands occasionally . . . [and] would not be able to concentrate more than one hour at a time, even on simple tasks . . . ." *Id.*

Dr. Blanchard made no statement that these limitations applied prior to June 1, 2009, date the ALJ found Ms. Johnston disabled. *Id.* The reviewing court reverses the ALJ's decision based upon evidence submitted to the Appeals Council when that evidence indicates an expanded period of disability. *Taylor*, 659 F.3d at 1228. Because Dr. Blanchard's letter does not clearly relate to Ms. Johnston's limitations during the period in question, the ALJ's decision should not be disturbed.

Finally, the court notes that Dr. Blanchard's May 17, 2010, letter clearly states that Ms. Johnston's limitations are due to fibromyalgia. Tr. 6. The ALJ found Ms. Johnston's alleged fibromyalgia non-severe at step two in the sequential proceedings. Tr. 14. Ms. Johnston does not challenge this finding, and it therefore should be affirmed.

### C.     Conclusion: Medical Source Statements

In summary, Ms. Johnston fails to establish reversible error in the ALJ's evaluation of the medical record. The ALJ's findings should be affirmed.

### CONCLUSION AND RECOMMENDATION

The Commissioner's decision that Ms. Johnston was not disabled prior to June 1, 2009, is

based upon the record and the appropriate legal standards. The Commissioner's decision should be affirmed.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due June 11, 2012. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within 14 days. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

IT IS SO ORDERED.

DATED this 23rd day of May, 2012.

                                              /s/ Patricia Sullivan  
                                              Patricia Sullivan  
                                              United States Magistrate Judge